Irving GELB, Plaintiff,

v.

The BOARD OF ELECTIONS IN THE CITY OF NEW YORK and George M. Spanakos, Seymour Sheldon, Weyman A. Carey, Vincent J. Cuttita, Douglas A. Kellner, Ferdinand C. Marchi, Paul Mejias, Gertrude Strohm, Vincent J. Velella, Kathleen M. Wagner, Defendants.

No. 94 Civ. 0013 (SS).

United States District Court, S.D. New York.

Dec. 2, 1996.

Dominick A. Fusco, Bronx, NY, for Plaintiff.

Corporation Counsel of the City of New York, New York City, Paul Marks, Assistant Corporation Counsel, for Defendants.

### AMENDED OPINION AND ORDER

SOTOMAYOR, District Judge.

In this action, plaintiff Irving Gelb complains that his federal and state rights were

violated during the 1993 Bronx County, New York Democratic Party primary and in the general election in that the New York State Board of Elections failed in various ways to inform voters of their right to cast a write-in vote or to provide them with the means to cast these votes. The defendants' motion to dismiss having been previously denied by this Court, both plaintiff and defendants now move for summary judgment pursuant to Fed.R.Civ.P. 56(c). For the reasons discussed below, plaintiff's motion for summary judgment is denied and defendants' motion is granted.

## BACKGROUND

In June of 1993, Irving Gelb (hereinafter "Gelb") attempted to seek the Democratic Party nomination for the office of Bronx Borough President. Gelb submitted a designating petition to be placed on the primary ballot, but the incumbent successfully challenged Gelb's petition and thereby kept Gelb's name from appearing on the ballot. Thereafter, Gelb ran in both the primary and the general election as a write-in candidate.

In his Final Amended Complaint, filed March 18, 1994, Gelb asserts that his federal constitutional rights and various state law rights were violated in both the primary and general elections when the New York State Board of Elections failed to: 1) provide sample ballots instructing voters on how to write in their choice of candidate; 2) provide voters with absentee ballots that instructed them of their right to vote for a write-in candidate; 3) provide voters with space on the voting booth ballot to write-in the candidate of their choice; 4) provide voters with display cards in the voting booths that would give instructions on how to vote for a write-in candidate; and 5) provide pencils within the voting booth so that voters could cast a ballot for a write-in candidate without surrendering their right to secrecy by asking poll workers for pencils.[1] Prior to their answer to Gelb's complaint, defendants moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the action for failure to state a claim upon which relief could be granted. On March 29, 1995, I

denied the motion and declined to abstain from deciding the case on the basis of the *Pullman* abstention doctrine. *See Gelb v. Board of Elections*, 888 F.Supp. 509 (S.D.N.Y.1995). After discovery, plaintiff and defendants moved for summary judgment.

## DISCUSSION

The standards for evaluating summary judgment motions are well established. Rule 56(c) provides that summary judgment is appropriate when:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The burden is on the moving party to show that no genuine issue of material fact exists. *See Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994) (citation omitted). A genuine issue of material fact exits where "the evidence is such that 'a reasonable jury could return a verdict for the nonmoving party.' " *Iacobelli Constr., Inc. v. County of Monroe*, 32 F.3d 19, 23 (2d Cir.1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986)). "On cross motions for summary judgment, the standard is the same as that for individual motions for summary judgment and the court must consider each motion independent of the other." *Aviall, Inc. v. Ryder System, Inc.*, 913 F.Supp. 826, 828 (S.D.N.Y.1996) (citing *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir.1993)). "Simply because the parties have cross-moved and therefore have implicitly agreed that no material issues of fact exist, does not mean that the court must join in that agreement and grant judgment as a matter of law for one side or the other. The court may conclude that material issues of fact do exist and deny both motions." *Id.*

---

1. For a more detailed discussion of Gelb's allegations, see *Gelb v. Board of Elections*, 888 F.Supp. 509, 511–514 (S.D.N.Y.1995), familiarity with which is assumed.

### I. Violations of Federal Constitutional Law

Plaintiff has not challenged this Court's conclusion in its prior decision that plaintiff's claims should be treated as if they were brought pursuant to 42 U.S.C. § 1983. *See Gelb v. Board of Elections,* 888 F.Supp. 509, 514 (S.D.N.Y.1995). In order to maintain a § 1983 action, a plaintiff must demonstrate that conduct committed by a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or the law of the United States. *See Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994). Here, plaintiff contends that his first, fourth,[2] and fourteenth amendment rights were violated in that "defendants deprived the plaintiff of his right to cast a write in vote in the New York City primary election and general election of 1993 for Bronx Borough President...." (Pl.'s Aff. in Support of Motion ¶ 2). He claims that he and other voters were not informed of the full extent of their right to vote, nor were they provided with the most basic means for casting a write-in vote: space in which to write in the vote and pencils with which to write. Plaintiff further asserts that the Board of Election's failure to provide him with a pencil violated his right to cast a secret ballot, presumably because it necessitated that he and other voters who wished to write in a candidate request a pencil from election workers. Plaintiff maintains that these failures amount to constitutional violations.

It has been said often and with great force that there is no right more fundamental in our country than the right to vote. *See e.g., Wesberry v. Sanders,* 376 U.S. 1, 17, 84 S.Ct. 526, 534, 11 L.Ed.2d 481 (1964) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined.") The Supreme Court has steadfastly protected the right to vote in both state and federal elections. *See Reynolds v. Sims,* 377 U.S. 533, 554, 84 S.Ct. 1362, 1377, 12 L.Ed.2d 506 (1964) ("the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections. A consistent line of decisions by this Court in cases involving attempts to deny or restrict the right of suffrage has made this indelibly clear.").

Just as clearly established in the law, however, is the proposition that not every voting irregularity arises to the level of a federal constitutional violation. *See e.g., Donohue v. Board of Elections of the State of New York,* 435 F.Supp. 957, 965 (E.D.N.Y.1976) ("Despite the importance placed by the Supreme Court on the right to vote and the integrity of elections, not every election irregularity will give rise to an equal protection or due process claim."). In *Powell v. Power,* 436 F.2d 84 (2d Cir.1970), the Second Circuit declared that it was not within the province of the federal judiciary to micro-manage the details of local elections. In that case, the Court held that voters in a Congressional primary election were not entitled to federal relief for errors committed by state election officials in permitting a number of unqualified individuals to cast ballots. The court declined to find a federal violation under such circumstances, explaining that:

> Were we to embrace plaintiffs' theory, this court would henceforth be thrust into the details of virtually every election, tinkering with the state's election machinery, reviewing petitions, registration cards, vote tallies, and certificates of election for all manner of error and insufficiency under state and federal law. Absent a clear and unambiguous mandate from Congress, we are not inclined to undertake such a wholesale expansion of our jurisdiction into an area which, with certain narrow and well defined exceptions, has been in the exclusive cognizance of the state courts.

*Id.* at 86. Further, the Court recognized that an "[u]neven or erroneous application of an otherwise valid statute constitutes a denial of equal protection only if it represents 'intentional or purposeful discrimination.' ... Similarly, the due process clause ... offer[s] no guarantee against errors in the

---

**2.** Plaintiff's fourth amendment claims were dismissed upon defendants' earlier motion to dismiss. *See Gelb v. Board of Elections,* 888 F.Supp. 509, 517 (S.D.N.Y.1995).

administration of an election." *Id.* The Court also reminded plaintiffs that "New York Election Law §§ 145, 330(2) provide a method for correcting such errors as are made...." *Id.* The Court concluded its opinion by stating that it could not "believe that the framers of our Constitution were so hypersensitive to ordinary human frailties as to lay down an unrealistic requirement that elections be free of any error." *Id.* at 88.

Similarly, just last year in *Cornett v. Sheldon*, 894 F.Supp. 715 (S.D.N.Y.1995), Judge John G. Koeltl of the Southern District dismissed a § 1983 action brought by a candidate against employees and members of the New York City Board of Elections. In that action, plaintiff alleged that defendants had wrongfully failed to place the candidate's name on the ballot for Congressional office. Citing *Powell v. Power*, the court held that the plaintiff did not meet the prerequisites of a due process claim, which require a "pervasive unfairness and inadequate state remedies." *Id.* at 727. The court reminded the parties that "Section 1983 protects only constitutional rights. It is not simply a means for federal review of allegedly arbitrary and capricious state action." *Id.* (citing *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 888 (2d Cir.1987)); *see also id.* ("In short, despite the existence of a comprehensive and expeditious state court process which attempts to adjudicate election law disputes promptly, the plaintiff seeks to open a second avenue of review. There is no constitutional basis for such a claim."); *Beatty v. Dinkins*, 478 F.Supp. 749, 751 (S.D.N.Y.1979) (dismissing action brought under the federal Voting Rights Act because the case "appear[ed] to be a local election dispute which should be resolved by the state courts.")

### A. Plaintiff's Due Process Claim

In the instant action, the imperfections in the election process alleged by plaintiff do not rise to the level of a federal constitutional violation. Arguably plaintiff has proven that there were violations of certain provisions of the New York State Election Law. Nevertheless, I cannot find that any of these violations rendered either the primary or the general election so pervasively unfair as to require a federal remedy under the due process clause. None of the flaws in the election process alleged by plaintiff—the difficulty in writing in candidates' names in the primary election and the need to ask for pencils in the general election—were so far-reaching as to necessitate a federal court's interference. Plaintiff has offered no evidence that these imperfections had any impact on the outcome of either election. Further, these imperfections did not have any effect on the casting of plaintiff's own vote. (Defs.' Mem. Ex. Gelb Dep. at 24). As noted by defendants, at least with respect to the general election,[3] there is "no evidence that either [plaintiff] or any other voter's attempt to cast a write-in vote was thwarted." (Defs.' Mem. at 6). I therefore find that these conditions, as irregular as they might have been, did not render either election pervasively unfair.

Furthermore, as the *Powell* court noted, the appropriate recourse for plaintiff's complaint is the state courts. As the defendants aptly note, "New York has established a comprehensive and expeditious process for adjudicating election law disputes. Plaintiff could have availed himself of that process by challenging the primary election under New York Election Law § 16–102 and the general election under New York Election Law § 16–

3. I note there is great uncertainty within state law as to whether a write-in option must be provided in a primary election. *See Harden v. Board of Elections*, 74 N.Y.2d 796, 797, 545 N.Y.S.2d 686, 544 N.E.2d 605 (1989) (finding that petitioner's request to run as a write-in candidate in a primary would not be allowed where there were defects in petitioner's designating petition which "call[ed] into serious question the existence of adequate support among eligible voters."); *In re Rudmann v. Scaringe*, 83 A.D.2d 913, 914, 442 N.Y.S.2d 667 (3d Dep't) (holding that "[t]he granting of an opportunity to ballot"

in a contested primary where there were significant problems with certain candidates' designating petitions "would be tantamount to condoning a clear failure of compliance with the Election Law...."), *aff'd*, 54 N.Y.2d 778, 443 N.Y.S.2d 368, 427 N.E.2d 507 (1981). *Cf. Burdick v. Takushi*, 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992) (rejecting a first and fourteenth amendment challenge to Hawaii's ban on write-in voting where Hawaii provided other alternatives for easy access to the ballot for independent and third party candidates).

106, but chose not to do so." (Defs.' Mem. at 4–5). Where such state remedies are available, the Second Circuit has unequivocally found that federal intervention is inappropriate. *See Powell*, 436 F.2d at 86. Hence, I find that because neither election was pervasively unfair and because there were adequate state law remedies for the violations complained of, plaintiff has not established a due process violation.

## B. Plaintiff's Equal Protection Claim

█ Plaintiff has not demonstrated an intentional effort on the part of any state actor to discriminate against write-in voters or write-in candidates as he is required to prove to sustain an equal protection claim. *See Rogers v. Lodge*, 458 U.S. 613, 102 S.Ct. 3272, 73 L.Ed.2d 1012 (1982); *Mobile v. Bolden*, 446 U.S. 55, 100 S.Ct. 1490, 64 L.Ed.2d 47 (1980). The letters and memoranda from New York State Board of Elections Deputy Counsel Stanley Zalen upon which plaintiff relies in support of his claim at best demonstrate that errors in the election occurred; they do not in any way demonstrate that such errors were intentional. On the contrary, they show an effort by the Board of Elections to correct mistakes that were made. (Pl.'s Mem. Exs. B, C, D). In addition, it is illogical to infer that an entity intentionally seeks to undermine write-in

candidates when it makes an effort to train their poll workers on write-in voting procedures and to include a description of such procedures in their training manuals. (Defs.' Mem. Exs. 1, 2). From what has been provided to this Court, plaintiff has shown no evidence of intentional discrimination and I therefore find in favor of the defendants on plaintiff's equal protection claim.

In sum, the election process errors about which plaintiff complains are the sort of minutiae that the Second Circuit in *Powell* cautioned the federal courts from overseeing in elections. Granting plaintiff's request for a federal remedy would be the epitome of what the Second Circuit characterized as being "thrust into the details of virtually every election, tinkering with the state's election machinery, reviewing petitions, registration cards, vote tallies, and certificates of election for all manner of error and insufficiency under state and federal law." *Powell*, 436 F.2d at 86.[4] Such micro-management is not within the power or province of this Court. Accordingly, I do not find that a federal constitutional violation has occurred.

## II. Pendent State Law Violations

█ I also find that I should relinquish jurisdiction over plaintiff's state law claims to the appropriate state forum.[5] Having found

---

**4.** The "details" alleged in *Powell* appear largely to address access to the ballot issues. Here, Gelb's claim also implicates the right to cast a vote itself, an issue which might suggest a more fundamental constitutional right. However, the Second Circuit has recently disapproved of any attempt to distinguish between these types of election law irregularities for purposes of federal constitutional analysis. *See Gold v. Feinberg*, 101 F.3d 796, 802 (2d Cir.1996) (providing that "the district court's distinction between the opportunity to cast one's vote ... and the opportunity to have one's vote fully count ... is analytically untenable. Both rights are constitutionally protected and neither is viewed as having more importance than the other."); *see also Williams v. Sclafani*, 444 F.Supp. 906, 911 (S.D.N.Y.) (providing that "the right to appear on the ballot is integral to the right to vote and must be measured by the same test of constitutionality.") (citing *Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968)), *aff'd*, 580 F.2d 1046 (1978). Nevertheless, even if a more heightened standard of review was granted to Gelb's claim, the imperfections in the voting process alleged are not sufficient to satisfy plaintiff's burden. *Cf.*

*Burdick v. Takushi*, 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992) (rejecting a claim that Hawaii's total ban on write-in voting is unconstitutional).

**5.** I caution plaintiff, however, that the feasibility of his state law cause of action, while stronger than his federal cause of action, is somewhat uncertain. The arguments proffered by defendants in their Supplemental Memorandum of Law that the statute of limitations for state election law violations bars plaintiff's claims are quite strong. Although plaintiff claimed in his Reply Brief that the defendants were late in raising the statute of limitations argument, (Pl.'s Reply at 3), the Court notes that the defendants raised the statute of limitations defense in their answer, and no more notice is required under the law. *See Kulzer v. Pittsburgh–Corning Corp*, 942 F.2d 122, 125 (2d Cir.1991) (noting that statute of limitations defense need not be raised in a pre-answer motion and that the defense "is sufficiently raised for purposes of [Fed.R.Civ.P.] 8 by its bare assertion.") (citing *Santos v. District Council of New York City*, 619 F.2d 963 (2d Cir.1980)).

that there is no federal constitutional violation and therefore no basis for federal intervention in this case, I follow the practice recommended by the Supreme Court in *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988), that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *See also United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (providing that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). This practice has been repeatedly affirmed in the Second Circuit. *See Rounseville v. Zahl*, 13 F.3d 625, 631 (2d Cir.1994) (where after dismissal of federal claims there remained "a complete 'hegemony of state law claims,' ... relinquishment of federal court jurisdiction [was] warranted."); *DiLaura v. Power Authority*, 982 F.2d 73, 80 (2d Cir.1992) (finding that the district court did not abuse its discretion by relinquishing jurisdiction over supplemental state negligence claim after federal claims were dismissed.); *Robison v. Via*, 821 F.2d 913, 925 (2d Cir.1987) (holding that after federal claims upon which jurisdiction rested were dismissed, "it may be an abuse of district court's discretion to take pendent jurisdiction of a claim that depends on novel questions of state law."); *Fay v. South Colonie Central School District*, 802 F.2d 21, 34 (2d Cir.1986) (providing that a district court's discretion to accept pendent jurisdiction is more "limited, however by the consideration that '[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.' ") (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725–28, 86 S.Ct. 1130, 1138–40, 16 L.Ed.2d 218 (1966)); *Cornett v. Sheldon*, 894 F.Supp. 715, 728 (S.D.N.Y.1995) (court should refrain from exercising pendent jurisdiction over remaining state law claims when it dismissed federal equal protection and due process claims); *see also Eccles v. Gargiulo*, 497 F.Supp. 419, 422 (E.D.N.Y.1980) (providing that "[t]he

court cannot but feel sympathy for plaintiffs in this case [but] ... their complaint raises questions of purely State law to be determined by the State courts.").

### *CONCLUSION*

With respect to the federal claims at issue, for the foregoing reasons, plaintiff's summary judgment motion is **DENIED** and defendants' summary judgment motion is **GRANTED**. Because the Court has declined to exercise supplemental jurisdiction, the state law claims are dismissed without prejudice. The Clerk of the Court is directed to enter judgment dismissing this action in accordance with this Opinion and Order.

**SO ORDERED.**