### Katharine LAI, Plaintiff,

v.

### NEW YORK CITY GOVERNMENT, Defendant.

No. 97 Civ. 2470(SAS).

United States District Court,
S.D. New York.

Jan. 15, 1998.

Katharine Lai, West Orange, NJ, pro se.

Sherril Kurland, Jeffrey Friedlander, Corporation Counsel of the City of New York, New York City, for defendant.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff Katharine Lai filed a Complaint on April 8, 1997, alleging that defendant New York City ("the City") had violated her rights under the Americans with Disabilities Act ("the ADA"), 42 U.S.C.A. § 12132 (1997). On October 14, 1997, plaintiff moved to amend the Complaint. Apparently in anticipation of this motion being granted, plaintiff filed an amended Complaint, which adds two new plaintiffs and a claim under 42 U.S.C. § 1983. On December 12, 1997, the City moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. I need not address the plaintiff's motion to amend: For reasons explained below, the City is entitled to summary judgment regardless of which Complaint is in effect.[1]

### I. Facts

The facts here are not in dispute. The subject of the controversy is the "New York City Special Vehicle Identification Permit" ("Special Vehicle Permit"), a special parking permit that allows its holder to park at expired meters and in "no parking" zones in New York City. See Defendant's Statement Pursuant to Local Civil Rule 56.1(a) ("Def's 56.1") at ¶¶ 11–12; Amended Complaint ("Cmplt.") at unnumbered page 1 (referring to the Special Vehicle Permit as a "New York City Handicapped Parking Permit"). To qualify for this permit, an applicant must have a severe handicap and either be a resident of New York City, a nonresident student attending school in New York City, or a nonresident employee working in New York City. See Def's 56.1 at ¶¶ 7, 9; New York City Charter § 2903(15)(a) (1997).

Carrying fewer privileges is the New York State Disability Parking Permit ("State Disability Permit"). Holders of these permits may park in designated off-street parking spaces in New York City; they may not, however, park in "no parking" zones. See Affidavit of Felice Morris, Associate Staff Analyst for the New York City Department of Transportation ("Morris Aff.") at ¶¶ 8–11. To be eligible for a State Disability Permit, one need not live, work or attend school in New York City, nor must one face a handicap severe enough to qualify for a Special Vehicle Permit. Compare Morris Aff. at ¶ 15 and N.Y. Vehicle and Traffic Law § 404–a (McKinney 1997) (describing requirements for Special Vehicle Permits and State Disability Permits, respectively). Holders of disability permits issued by other states may park in the same off-street spaces. See Morris Aff. at ¶ 26.

Plaintiff, holder of a New Jersey State disability parking permit, received two summonses on December 16, 1996 for parking at an expired meter. See Def's 56.1 at ¶ 13; Cmplt. at unnumbered page 2. If plaintiff had possessed a Special Vehicle Permit, she would not have received these tickets. See Def's 56.1 at ¶ 11. Plaintiff's permit did, however, allow her to park in designated off-street spaces. See Morris Aff. at ¶¶ 10, 26.

### II. Discussion

#### A. Americans with Disabilities Act Claim

■ Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C.A. § 12132 (1997). Therefore, to state a claim for relief under the ADA, a plaintiff must allege, inter alia, that she has been denied a benefit "by reason of [her] disability." Castellano v. City of New York, 946 F.Supp. 249, 252 (S.D.N.Y. 1996); Lincoln CERCPAC v. Health and Hospitals Corp., 920 F.Supp. 488, 497 (S.D.N.Y.1996). Here, plaintiff is not alleging that she was discriminated against because of her disability, but rather because she is not a resident of New York City. See Cmplt. at unnumbered page 1 (The challenged rules have "definitely discriminated [against] all the handicapped people from other CITIES and STATES in [the] U.S.A."). While discrimination against non-residents may be objectionable, it is not prohibited by the ADA.

---

1. Though the Amended Complaint purports to add two new plaintiffs, it does no more than state their names, addresses, and physical conditions. While I will consider the new theory of recovery mentioned in the Amended Complaint, I will refer to Ms. Lai as the sole plaintiff.

As this is the only form of discrimination the plaintiffs have alleged, they have failed to state a claim under the ADA.

## B. Section 1983 Claim

As noted above, the amended Complaint also asserts that the City's issuance of the summonses, in spite of plaintiff's New Jersey disability permit, violated rights protected by 42 U.S.C. § 1983. In order to maintain a § 1983 action, plaintiff must allege 1) that the conduct complained of was committed by a person acting under color of state law, and 2) that the conduct complained of deprived her of rights, privileges or immunities secured by the Constitution or laws of the United States. *See Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994); *Gelb v. Board of Elections,* 950 F.Supp. 82, 84 (S.D.N.Y.1996), *aff'd,* 125 F.3d 843 (2d Cir.1997). The first part of this test is obviously satisfied in this case. The only remaining question is whether the City's parking rules deprived plaintiff of a Constitutional right, privilege or immunity.

### 1. Privileges and Immunities Clause

■ The fact that the Special Vehicle Permit is available only to those who live, work or attend school in New York City implicates the Privileges and Immunities Clause of Article IV of the Constitution. "When a challenged restriction deprives nonresidents of a privilege or immunity protected by this Clause, it is invalid unless '(1) there is a substantial reason for the difference in treatment; and (2) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective.'" *Barnard v. Thorstenn,* 489 U.S. 546, 552, 109 S.Ct. 1294, 103 L.Ed.2d 559 (1989) (quoting *Supreme Court of New Hampshire v. Piper,* 470 U.S. 274, 284, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985)). The purpose of the Clause is to "prevent[ ] a State from discriminating against citizens of other States in favor of its own." *Baldwin v. Fish and Game Comm'n,* 436 U.S. 371, 382, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978) (quoting *Hague v. CIO,* 307 U.S. 496, 511, 59 S.Ct. 954, 83 L.Ed. 1423 (1939)).

■ However, not every distinction between residents and nonresidents violates the Clause. *See Baldwin,* 436 U.S. at 383. For one thing, the Clause protects only "fundamental" privileges and immunities. A privilege is considered "fundamental" for these purposes when it is "basic to the livelihood of the Nation." *United Bldg. and Constr. Trades Council v. Mayor and Council,* 465 U.S. 208, 218, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984). "Fundamental" privileges include the pursuit of private sector employment, *see Supreme Court v. Friedman,* 487 U.S. 59, 66, 108 S.Ct. 2260, 101 L.Ed.2d 56 (1988) and access to medical services. *See Doe v. Bolton,* 410 U.S. 179, 200, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). Privileges that are not fundamental include the receipt of benefits other than as of right. *See United Bldg. and Constr.,* 465 U.S. at 219 (public employment is not a fundamental privilege); *see also* Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law: Substance and Procedure § 12.7, at 109 (2d ed. 1992) ("True welfare benefits—which involve the giving of goods or services directly to a group of recipients who have no inherent constitutional claim to them—may be restricted to state or city residents....").

■ No New Yorker would ever belittle the importance of a parking space. However, it is clear that a right to park in an on-street "no parking" or metered zone is not "fundamental" for the purposes of the Privileges and Immunities Clause. On-street parking is important, especially for those who cannot use public transportation, but it is not "basic to the livelihood of the Nation." Rather, the Special Vehicle Permit at issue here resembles the kind of benefit program the Supreme Court has indicated is outside the scope of the Privileges and Immunities Clause. *See United Bldg. and Constr.,* 465 U.S. at 219. Therefore, plaintiff has failed to allege that she has been deprived of a right secured by the Privileges and Immunities Clause.

### 2. The Equal Protection Clause

The classification the City's Special Vehicle Permit program draws between those who live, work or study in the City and those who do not also implicates the Equal Protection

Clause. In the absence of a suspect categorization—one based on, for example, race, alienage, or national origin—"legislation is presumed to be valid and will be sustained if the classification drawn ... is rationally related to some legitimate state interest." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). The rule at issue here does not create a suspect classification; therefore, the only question is whether it satisfies the rational relation test.

■ I find that it does. The City has an obviously legitimate interest in providing parking spaces for those whose disabilities prevent them from using public transportation, Given the finite number of on-street parking spaces available in New York City, this interest can only be advanced by a regulatory scheme that limits those eligible for on-street parking to a relatively small group of people whose need is greatest.[2] Those who live, work or attend school in New York City and have very severe disabilities can rationally be presumed to fall in this category. Thus, the City's Special Vehicle Permit program satisfies the rational relation test.

As the plaintiff points out, people not eligible for a Special Vehicle Permit may also, from time to time, have pressing engagements in New York City, and may face difficulty finding parking spaces. Ideally, perhaps, the City's rules could provide for exceptions in such cases. The rational relation test, however, does not require ideal rules, only rational ones. *See Baldwin*, 436 U.S. at 390 ("[A] statutory classification impinging upon no fundamental interest ... need not be drawn so as to fit with precision the legitimate purposes underlying it.") (quoting *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 813, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976)). Therefore, the City's conduct did not deprive the plaintiff of her rights under the Equal Protection Clause.

### 3. The Right to Travel

■ Finally, I note that the Special Vehicle Permit program implicates—at least theoretically—the plaintiff's constitutional right to travel. This right has two functions: First, it prohibits the erection of actual barriers to interstate movement; second, it protects new residents of a state from disparate treatment in favor of longer term residents. *See Zobel v. Williams*, 457 U.S. 55, 61 n. 6, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982). As to the second function, the Supreme Court has observed that "[i]n reality, right to travel analysis refers to little more than a particular application of equal protection analysis." *Id.* (citing *Memorial Hosp. v. Maricopa County*, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974); *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972)). For the reasons the City's program does not violate the Equal Protection Clause, therefore, it also does not abrogate this aspect of the constitutional right to travel.

Nor can it be said that by failing to allow plaintiff to park in "no parking" or metered zones, the City has erected an "actual barrier[ ] to interstate movement." *Zobel*, 457 U.S. at 61 n. 6. Of course, it is often difficult to find on-street parking on the crowded streets of Manhattan. Moreover, people like plaintiff may find it impossible to travel any way other than by car. However, the difficulty she faces in coming here is not caused by any barrier erected by the City, but instead by the simple fact that millions of other people want to park here as well. Thus, though plaintiff's *ability* to travel is limited by her physical condition and the shortage of on-street parking spaces in New York City, her *right* to travel has not been abridged by the City's parking regulations.

### III. Conclusion

The plaintiff's amended Complaint fails to state a claim upon which relief can be granted under the ADA. Moreover, the City's parking regulations do not violate the Privileges and Immunities Clause of Article IV of

---

2. There are currently 7,000 people who hold active Special Vehicle Permits. *See* Morris Aff. at ¶ 24. These people would face vastly greater competition for a limited number of on-street parking spaces if holders of other handicap permits were also allowed to park in "no parking" zones—there are 46,000 State Disability Permit holders in New York City alone. *See id.*

the Constitution, the Equal Protection Clause, or the plaintiffs' constitutional right to travel. The City's motion for summary judgment is therefore granted.

SO ORDERED.