Irving A. GELB, Plaintiff–Appellant,

v.

The BOARD OF ELECTIONS OF THE CITY OF NEW YORK, Weyman A. Carey, Commissioner, Michael J. Cilmi, Commissioner, Michael L. Cohen, Commissioner, Ronald J. D'Angelo, Commissioner, Douglas A. Kellner, Commissioner, Crystal N. Paris, Commissioner, Gertrude Strohm, Commissioner, Frederic M. Umane, Commissioner, Vincent J. Velella, Commissioner, Stephen H. Weiner, Commissioner, Daniel DeFrancesco, Executive Director, Margaret Ognibene, Deputy Executive Director, Jon R. Del Giorno, Administrative Manager, Defendants–Appellees.

No. 99–9369.

United States Court of Appeals, Second Circuit.

Argued: May 16, 2000.

Decided: Aug. 22, 2000.

IRVING GELB, Bronx, NY, Plaintiff–Appellant, pro se,

KATHLEEN V. ALBERTON New York City Law Department New York, N.Y. (Michael D. Hess, Corporation Counsel of the City of New York, on the brief), for Defendants–Appellees.

Before: MINER and WALKER, Circuit Judges, and BUCHWALD, District Judge.*

Judge BUCHWALD dissents in a separate opinion.

MINER, Circuit Judge:

Plaintiff-appellant Irving A. Gelb appeals from a summary judgment entered in the United States District Court for the Southern District of New York (Berman, *J.*) in favor of defendants-appellants, The Board of Elections of the City of New York, its ten members individually and its Executive Director, Deputy Executive Director and Administrative Manager (collectively "City Board"). The district court rejected Gelb's claim that the City Board deprived him of his constitutional rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution. Invoking the provisions of 42 U.S.C. § 1983, Gelb challenged the administration of the New York State Election Law by the City Board relative to the law's provision for write-in voting in primary elections, among other things. Gelb asserted that the City Board re-peatedly refused his requests to afford ballot space for write-in voting in contested primary elections in the absence of a petition for opportunity to ballot. For various reasons, the district court found no constitutional violations.

Before we proceed to a consideration of Gelb's constitutional claims, we need to determine whether the New York State Election Law requires a Board of Elections in the State of New York to provide space on the ballot for write-in voting in contested primary elections when a petition for opportunity to ballot has not been filed. Because it appears that the New York City Board of Elections interprets the election law to require write-in ballot space in a contested primary election *only* when a petition for opportunity to ballot has been filed, an interpretation appearing to be contrary to that of the New York State Board of Elections and Attorney General, and because the New York law is unclear, we certify the question to the New York Court of Appeals.

## BACKGROUND

The action giving rise to this appeal is the second brought by Gelb, an enrolled member of the Democratic Party, challenging the administration by the City Board of the provisions of the New York Election Law insofar as those provisions pertain to write-in voting in primary elections. The first action, based on constitutional as well as state law claims, grew out of Gelb's campaign in 1993 to be the candidate of the Democratic Party for the Office of Bronx Borough President. Although Gelb submitted a designating petition for the primary election, the incumbent successfully challenged the petition, but Gelb continued to seek the nomination as a write-in candidate in the primary election. After he lost in the primary, he ran as a write-in candidate in the general election, which he also lost.

---

* The Honorable Naomi Reice Buchwald, of the United States District Court for the Southern District of New York, sitting by designation.

In his amended complaint, Gelb faulted the City Board's administration of the primary election in failing to provide sample ballots containing write-in columns; in furnishing absentee ballots without proper instructions and spaces for write-in voting; in providing inadequate voting booth ballots for write-in voting; and in violating voting booth secrecy by failing to provide pencils for write-in voting and thereby making it necessary to request pencils from poll workers. Gelb also faulted the City Board for the same sample ballot inadequacies and voting secrecy violations in the general election and also for providing display cards in voting booths in the general election that were lacking write-in instructions.

Gelb's action survived a motion to dismiss for failure to state a claim, or, in the alternative, for abstention. The district court determined that the complaint sufficiently stated due process and equal protection claims based on intentional acts and omissions on the part of the City Board designed to discourage write-in candidacies and thereby "bolster the candidacies of people nominated by the established parties." *Gelb v. Board of Elections*, 888 F.Supp. 509, 516–17 (S.D.N.Y. 1995). However, the action did not survive the City Board's later motion for summary judgment. *See Gelb v. Board of Elections*, 950 F.Supp. 82, 87 (S.D.N.Y. 1996) (*Gelb I*).

The district court found "that because neither [the primary nor the general] election was pervasively unfair and because there were adequate state law remedies for the violations complained of, plaintiff ha[d] not established a due process violation." *Id.* at 86. As to the equal protection claim, the district court found that the evidence presented by Gelb did not demonstrate that any errors on the part of the City Board were intentional. Accordingly, the absence of "evidence of intentional discrimination" compelled the district court's conclusion that no federal constitutional violation had occurred. *Id.* The district court declined to exercise jurisdiction over the state law claims and dismissed them without prejudice. *Id.* at 87. We affirmed by summary order. *See Gelb v. Board of Elections*, 125 F.3d 843 (2d Cir.1997) (Table).

Protesting the curtailment of his right to vote and seek office in the September 9, 1997 Democratic primary election and in the November 4, 1997 general election, Gelb filed his complaint in the action giving rise to this appeal on December 22, 1997. In that complaint Gelb alleged that the City Board violated the election law by denying the right to vote by write-in in the 1997 primary election despite the fact that more than one candidate had filed a designating petition. Gelb alleged that "[t]his right was deliberately and wrongfully withheld in the Primary of 1997, and also in the primaries of 1996, 1995, 1994 and 1993." Gelb also claimed a number of other election law violations on the part of the City Board with respect to primary elections in various years before 1997. These included the provision of sample ballots that omitted any reference to write-in voting; the issuance of absentee ballots that were deficient and inadequate for write-in voting; and the failure to properly count write-in votes at the polls.

As to the general election in 1997 and various other years, Gelb complained that the sample ballots provided to voters failed to include write-in instructions; that there were no instructions provided within the voting booths for write-in voting; and that the write-in votes that were cast were improperly counted at the Board of Elections rather than at the polls, all in violation of the election law. Asserting deprivations of his First and Fourteenth Amendment rights by reason of the City Board's intentional and continuing violations of the state election law, Gelb sought compensatory and punitive damages against the City Board and its individual members and employees named as defendants in this action.

The complaint in Gelb's second (and present) action also survived a motion by the City Board to dismiss for failure to state a claim. Before considering the dismissal motion, the district court addressed a contention that the action was barred by the doctrine of collateral estoppel. The court found that the issues in the earlier case were not identical to the issues in this case because "[t]he claims in *Gelb I* solely concerned the 1993 election, while the claims here allege a pattern of repeated violations leading up to and including the primary and general election of 1997." *Gelb v. Board of Elections*, No. 97–9404, 1998 WL 386440, at *2 (S.D.N.Y. July 10, 1998).

The district court noted that "the relevant issue here—whether the pattern of omissions evince[s] an intentional discrimination against write-in candidates—was not actually litigated and decided in *Gelb I.*" *Id.* at *3. Finding an equal protection claim stated, the court observed that "if states cannot structure election laws to favor established political parties, so too should states be prohibited from violating the election law to favor candidates officially nominated by an established political party—to the detriment of enrollees who wage write-in campaigns." *Id.* at *4. With respect to due process, the court stated "[E]ven if I conclude that an adequate state law remedy exists, if the defendants' actions were willful and deliberate, the plaintiff can still plead an adequate Due Process claim." *Id.* at *6. Finding that the series of omissions pleaded satisfied the requirements of pervasive unfairness required for a due process claim, the court distinguished *Gelb I*'s rejection of due process as a basis for recovery in the 1993 election. *Id.*

Thereafter, by notice of motion dated December 10, 1998 and entered the same date (together with additional motion papers dated January 11, 1999 and entered on that date), Gelb moved for summary judgment. By notice of motion dated December 31, 1998 and entered January 14, 1999, the City Board cross-moved for summary judgment. By order entered September 30, 1999, the district court granted the City Board's motion, denied Gelb's motion and dismissed the complaint. *See Gelb v. Board of Elections*, 71 F.Supp.2d 259 (S.D.N.Y.1999) (*Gelb II*).

In its analysis, after first discussing the criteria for summary judgment, the district court noted that "Plaintiff has not disputed[ ] that the [City] Board interprets New York Election Law § 6–164 to require writing-in balloting in a primary election if and only if a candidate has filed a valid 'opportunity to ballot' petition." *Id.* at 264. According to the district court, Gelb also did not dispute the City Board's claims that write-in voting is allowed in all general elections, that poll workers are trained to assist voters on voting machines, that written instructions are provided for write-in voting on absentee ballots and that all write-in votes are counted at the same time as the canvass of paper ballots because of the Board's experience with the jamming of the paper roll on voting machines at the time of the vote count at the polls. *See id.* at 265.

The district court reviewed applicable precedent after opining as follows:

It is difficult for this Court to perceive Mr. Gelb's grievance. He was not prevented (nor, apparently, was anyone else) from casting a write-in vote for himself in the 1993 or the 1997 general elections for Bronx Borough President. He was unable to cast write-in votes in the 1993 and 1997 primaries—but, in this, he was in no different position from anyone else in New York City who failed to submit opportunity to ballot petitions. He has (already) had his "day" in Federal Court. *See Gelb*, 950 F.Supp. 82. Despite the availability and adequacy of state court mechanisms to air any remaining electoral challenges he may have, he has chosen, rather, to bring *Gelb I* all over again in this forum.

*Id.*

The court then addressed Gelb's due process and equal protection claims and

found them wanting. It observed that the due process clause would protect against pervasively unfair election practices but not against mere errors in the administration of elections. Because "the alleged election process 'irregularities' at issue do not rise to the level of a Federal due process violation" and because Gelb had not availed himself of adequate state remedies, the court rejected the due process claims advanced by Gelb. *Id.* at 267.

With respect to the equal protection claim, the district court stated as follows:

The fact that the Board has continued to apply its (legal) interpretation of New York Election Law § 6–164 despite Plaintiff's protestations in *Gelb I* demonstrates, perhaps, that the Board's actions were not the result of inadvertence. It does not make them illegal. Mere willfulness, without the specific intent to deprive Plaintiff of a fundamental right, is insufficient to establish an Equal Protection claim.

*Id.* at 268 (footnote omitted). Unable to identify official state action constituting intentional or purposeful discrimination, and crediting "substantial evidence" that the City Board does not discriminate against those who wish to vote by write-in ballot, the court concluded that Gelb's equal protection claim was not sustainable. *Id.* at 268–69. After dismissing Gelb's state law claims in the exercise of its discretion to do so in the absence of any viable federal claims, the court was constrained to grant summary judgment to the City Board and deny it to Gelb.

Since Gelb has been permitted to cast a write-in ballot in all the general elections described in his complaint and we find no merit in any of his claims that turn on restriction of write-in voting in general elections, we reject all such claims. As to Gelb's claims relating to primary elections, we find possible merit only in the argument that he was unconstitutionally barred from the write-in voting process as a voter and potential candidate by reason of the City Board's continuing refusal to allow write-in voting in the absence of a petition for opportunity to ballot. Because of the uncertainty of the New York law that is part and parcel of that argument, we certify.

## DISCUSSION

### I. *THE CONSTITUTIONAL RIGHT TO VOTE IN PRIMARY ELECTIONS AND ITS LIMITATIONS*

■ The Supreme Court has observed that "[n]o right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." *Wesberry v. Sanders,* 376 U.S. 1, 17, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964). A federal court will intervene where state laws impose impermissible burdens on "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Anderson v. Celebrezze,* 460 U.S. 780, 787, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983) (internal quotation marks omitted) (finding violation of First and Fourteenth Amendment rights by reason of impermissible burden imposed by state law early filing deadlines for independent presidential candidate). It is just as important, if not more so, for the citizenry to have a voice in primary elections as in general elections, for it is in the primaries that the ultimate contestants are chosen.

The Supreme Court has recognized the authority of the states to regulate the time, place and manner of primary elections, but has noted that "this authority does not extinguish the State's responsibility to observe the limits established by the First Amendment rights of the State's citizens." *Tashjian v. Republican Party of Conn.,* 479 U.S. 208, 217, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986). In its recent decision invalidating the California blanket primary law as violative of a political party's First Amendment associational rights, the Court

once again recognized the authority of the States to structure and monitor primary elections. *See California Democratic Party v. Jones,* —— U.S. ——, ——, 120 S.Ct. 2402, 2406, 147 L.Ed.2d 502 (2000). In its opinion in *Jones,* the Court reviewed some of its precedent dealing with permissible state requirements for primary elections: that political parties use the primary format to select nominees, *see American Party of Tex. v. White,* 415 U.S. 767, 781, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974); that candidates demonstrate "a significant modicum of support" to secure a place on the ballot, *Jenness v. Fortson,* 403 U.S. 431, 442, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971); and that party registration take place a reasonable period of time before a primary election, *see Rosario v. Rockefeller,* 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973). *See* —— U.S. at ——, 120 S.Ct. at 2407.

■ It is thirty-year-old doctrine in this Circuit that a § 1983 action invoking the Equal Protection Clause is not available to remedy election process errors in the absence of a showing of "intentional or purposeful discrimination." *Powell v. Power,* 436 F.2d 84, 88 (2d Cir.1970) (internal quotation omitted). *Powell* involved a challenge to a congressional primary election based on a claim that election officials had allowed unqualified voters to cast primary ballots. In that case, we also rejected a due process challenge, holding that the Due Process Clause does not guarantee against election errors, at least where fair and adequate remedies for the correction of such errors are provided by state law. *See id.* Judge Kaufman wrote for the court that acceptance of plaintiffs' theory of the case would "henceforth ... thrust [this court] into the details of virtually every election, tinkering with the state's election machinery, reviewing petitions, registration cards, vote tallies, and certificates of election for all manner of error and insufficiency under state and federal law." *Id.* at 86.

In *Gold v. Feinberg,* 101 F.3d 796, 800 (2d Cir.1996), we reiterated our reluctance to find constitutional error in the conduct of primary elections that involved unintended irregularities. The irregularities in that case involved delays in the arrival of voting machines at election districts, miscounting of votes due to the incorrect placement of templates over ballots and the presence of ineligible candidates on ballots. *See id.* at 798. Rejecting due process as well as equal protection claims, and relying on our *Powell* precedent, Judge Altimari wrote as follows:

> [W]here, as here, there exists a state law remedy to the election irregularities that is fair and adequate, human error in the conduct of elections does not rise to the level of a Fourteenth Amendment constitutional violation actionable under § 1983 in the absence of willful action by state officials intended to deprive individuals of their constitutional right to vote. Short of that, human error is something we all have to live with.

*Id.* at 802. *See also Coto v. New York City Bd. of Elections,* 101 F.3d 803, 804 (2d Cir.1996) (same author); *see* Roger J. Miner, *Frank X. Altimari—Humanist Judge,* 15 Touro L.Rev. 1411 (1999).

Recently, we have dealt with signature requirements for ballot access in primary elections. In *Rockefeller v. Powers,* 78 F.3d 44 (2d Cir.1996), we sustained a First Amendment challenge to the requirement that candidates seeking access to the Republican presidential primary ballot in New York secure the signatures of five percent or 1,250 (whichever is less) of the registered Republican voters in each election district in the state. We agreed with the district court that this requirement, combined with hypertechnical requirements relating to the petitions for ballot access by presidential hopefuls, imposed "substantial burdens on candidates" and were "far more burdensome than those adopted by virtually every other state." *Id.* at 45. In this regard, we observed that "the 5%/1250 requirement is itself onerous

in comparison with other states *even without the very technical rules* concerning the validation and presentation of the signatures that require as a practical matter the collection of at least 140% of the requisite number of signatures." *Id.* at 46 (emphasis supplied). Accordingly, the district court's remedy, which utilized an alternative scheme under which .5 percent or 1,000 signatures would be sufficient in each election district, was approved as sufficient. *See id.* We noted that plaintiffs had met the .5 percent requirement with signatures that were valid "even by New York's whimsical standards." *Id.*

The precedential effect of *Rockefeller* was confronted by this court last year in a case that involved the requirement for an identical number of signatures as a condition for access to congressional primary ballots. *See Prestia v. O'Connor*, 178 F.3d 86 (2d Cir.1999) (per curiam). The challenge there was to a rejection of a petition for opportunity to ballot, a device that would have allowed primary voters in the Conservative party to write in the names of candidates of their choice. Distinguishing *Rockefeller*, the panel rejected the challenge, determining that the holding in that case was limited to special circumstances pertaining to the presidential primary that were not present in the case before it. The panel's per curiam opinion limned the distinction as follows:

> In a congressional primary, organizers of a ballot access petition focus exclusively on a single congressional district, and nothing in the record would support the suggestion that the 5%/1250 signature requirement, when viewed in light of the state's overall election scheme, precludes viable candidates and write-in campaigns, thereby resulting in primary elections that are uncontested or give voters only a very limited choice.

*Id.* at 89. Although the 0.5 percent/1,000 signature requirement was approved for presidential primaries, it could not be said that "the important state interest in a 'modicum of support' was satisfied here

when the write-in petition gained signatures from more than 0.5%—that is, more than 14—of the 2800 registered [Conservative Party] voters in the 7th Congressional District." *Id.* Accordingly, constitutional claims of speech and associational deprivations were seen to be without foundation.

The Supreme Court visited the issue of write-in voting in a case challenging the failure of Hawaii's state election laws to allow any write-in voting. *See Burdick v. Takushi*, 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992). The highest court in Hawaii, answering certified questions posed by the United States District Court for the District of Hawaii, had responded that state law barred write-in voting in general elections in that state. *See Burdick v. Takushi*, 70 Haw. 498, 776 P.2d 824 (1989). Resolving a federal constitutional challenge to the ban, the Supreme Court

> conclude[d] that when a State's ballot access laws pass constitutional muster as imposing only reasonable burdens on First and Fourteenth Amendment rights—as do Hawaii's election laws—a prohibition on write-in voting will be presumptively valid, since any burden on the right to vote for the candidate of one's choice will be light and normally will be counterbalanced by the very state interests supporting the ballot access scheme.

*Burdick*, 504 U.S. at 441, 112 S.Ct. 2059.

The Court found no unconstitutional burden on First and Fourteenth Amendment rights because constitutionally sufficient ballot access was available. This access consisted of three mechanisms, to be utilized within established time frames, for candidates to appear on Hawaii's open primary ballots: a party petition signed by one percent of the state's registered voters, with nominating papers certifying that the candidate is a member of the party sought to be represented in the general election; designation by established political parties, with nominating papers as provided for in the first mechanism; and nominating papers for placement on a non-

partisan ballot, with the requirement that the candidate receive ten percent of the primary vote or the number sufficient to nominate a partisan candidate, whichever is less. *See id.* at 435–36, 112 S.Ct. 2059.

Although the *Burdick* case revolved around the question of access to a general election ballot, the end result would appear to be the same in a case involving access to a primary election ballot: the state need not make provisions for write-in voting if other reasonable non-burdensome means are available and afford constitutionally sufficient ballot access. But *Burdick* does not apply here, and the district court relied upon inapposite authority by citing it. In New York, there are provisions for write-in voting in both primary and general elections, provisions that are alleged to have been intentionally disregarded by the City Board. We now turn to an examination of the relevant New York Law.

## II. *THE NEW YORK ELECTION LAW*

New York law requires that write-in voting be allowed in all general elections, *see* N.Y. Elec. Law § 7–104.4(b) (McKinney 1998), and the City Board has made arrangements for such voting in all general elections. Access to the ballot in primary elections may be obtained through the filing of designating petitions containing the requisite number of signatures of enrolled party voters secured within an established time frame. *See* N.Y. Elec. Law §§ 6–118, –158. If only one designating petition is filed, no primary election need be held. *See* N.Y. Elec. Law § 6–160.2 ("All persons designated for uncontested offices or positions at a primary election shall be deemed nominated or elected thereto, as the case may be, without balloting.").

Another means of access to the primary ballot in New York is through the petition for opportunity to ballot. New York Election Law § 6–164 provides in part as follows:

Enrolled members of a party entitled to vote in the nomination of a candidate for public office or the election of a candidate for party position in a primary election of such party, and equal in number to at least the number of signers required to designate a candidate for such office or position may file with the officer or board with whom or which are filed designating petitions for such office or position a petition requesting an opportunity to write in the name of a candidate or candidates, who need not be specified, for such office or position. Upon the receipt of such a petition, such office or position shall be deemed contested and the primary ballots of the party shall afford an opportunity to vote thereon.

Accordingly, the filing of a valid petition for opportunity to ballot, *i.e.*, a petition for write-in voting, turns an uncontested primary election into a contested one. The signatures on such a petition must be equal in number to those required for a designating petition submitted by a named candidate for the office at issue. *See* N.Y. Elec. Law §§ 6–136.2, –164.

Citing the provisions of § 6–164, the City Board argues that the Election Law does not permit write-in voting in a primary election in the absence of a valid petition for opportunity to ballot, even if there are two or more candidates and a primary election must be held in any event. Moreover, although the Election Law provisions relating to the form of ballot state that "no ballot shall be printed for a party whose primary is uncontested unless a petition for opportunity to ballot has been filed," N.Y. Elec. Law § 7–114.1(d), they also state that where a primary election is held, *i.e.*, in cases where two or more candidates have filed designating petitions, "[s]paces containing names of candidates and for writing in names, and intervening spaces on the paper ballot, shall be separated by light horizontal lines." N.Y. Elec. Law § 7–114.2(g).

A 1963 opinion of the New York Attorney General, reviewing the predecessors of the foregoing statutes, concluded that write-in voting in primary elections was not limited to primaries in which a petition for opportunity to ballot had been filed. *See* 1963 Op. N.Y. Att'y Gen. 178. According to that opinion, the presence of two or more candidates on the ballot in a contested primary election provided the same "opportunity to ballot" that would have been provided for write-in voting if a petition had been filed for that purpose. The record indicates that the New York State Board of Elections holds to that opinion. The City Board indicates that its interpretation of the Election Law is just as good as the State Board's interpretation, despite the Election Law's clear indication that the City Board is subordinate to the State Board's authority to

> 1. issue instructions and promulgate rules and regulations relating to the administration of the election process, election campaign practices and campaign financing practices consistent with the provisions of law;

> 2. visit boards of elections, examine their procedures and records and direct that any such procedures be modified in any manner consistent with the provisions of this chapter[.]

N.Y. Elec. Law § 3–102.

## III. *ISSUES TO BE RESOLVED*

If indeed New York law affords primary voters the opportunity for write-in voting in a primary election where two or more designated candidates appear on the ballot, then Gelb has been denied that opportunity. Whether the refusal to provide a write-in space was violative of Gelb's First and Fourteenth Amendment rights cannot be resolved without a determination that he must be afforded the opportunity as a matter of New York law. In a recent decision holding that a class of one may assert a claim of deprivation of equal protection, the Supreme Court reiterated its long-established explanation that "[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech,* — U.S. —, — – —, 120 S.Ct. 1073, 1074–75, 145 L.Ed.2d 1060 (2000) (internal quotations and citations omitted; alteration in original).

■ In light of the repeated refusals of the City Board to afford Gelb (and others) write-in voting privileges in primary elections, it may well be that the Board engaged in arbitrary, purposeful and intentional discrimination. This does not appear to be a case of mere "unintended irregularities." *Gold,* 101 F.3d at 800. Although we do not foreclose the possibility of ultimate summary judgment in favor of the City Board, we note that summary judgment is generally inappropriate where questions of intent and state of mind are implicated. *See Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985); *Patrick v. LeFevre,* 745 F.2d 153, 159 (2d Cir. 1984). As to the City Board's contention that state law provides an adequate remedy for the violations of which Gelb complains, we have no doubt that this is so. However, we never have held that a state remedy alone, no matter how adequate, is a reason for denying consideration of a constitutional claim in an election case. In any event, the Supreme Court has admonished federal courts on more than one occasion of their "virtually unflagging obligation" to exercise the jurisdiction conferred by Congress. *E.g., Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (internal quotation marks omitted).

## IV. *THE NEED FOR CERTIFICATION*

■ Certification is justified by reason of the absence of authoritative state court

interpretations of the election statutes at issue here, the importance of the issue to the state election process, the likelihood that the question will recur, the seeming conflict between the statutory interpretation of the City Board and the State Board of Elections, and the capacity of certification to resolve the most critical phase of this litigation. The resolution of the federal questions presented clearly hinges on a "determinative question[ ] of New York law on which [the New York Court of Appeals] has not previously spoken," *Tunick v. Safir*, 94 N.Y.2d 709, 711, 709 N.Y.S.2d 881, 731 N.E.2d 597 (2000): whether a voter in a contested primary election in New York City (or elsewhere in the state) is entitled to have facilities available for write-in voting in the absence of a petition for opportunity to ballot.

Local Rule § 0.27 permits us to certify to the State's highest court any "unsettled and significant question of state law that will control the outcome of a case pending before this Court." 2d Cir. R. § 0.27; *see also* N.Y. Comp.Codes R. & Regs. tit. 22, § 500.17(a) (2000) (permitting certification to the New York Court of Appeals of "determinative questions of New York law ... for which there is no controlling precedent of the Court of Appeals"). Because, applying these rules, we believe certification is appropriate in this case, we certify the following question to the New York Court of Appeals: "Is write-in voting available to an enrolled party voter in a contested primary election where no timely petition for opportunity to ballot has been filed?"

\* \* \* \* \*

## V.

### CERTIFICATE

The foregoing is hereby certified to the Court of Appeals of the State of New York pursuant to Local Rule § 0.27 of the United States Court of Appeals for the Second Circuit and N.Y. Comp.Code R. & Regs. tit. 22 § 500.17(b), as ordered by the United States Court of Appeals for the Second Circuit.

BUCHWALD, District Judge, dissenting:

I respectfully dissent and would affirm on the basis of the opinion of District Judge Richard M. Berman, reported at 71 F.Supp.2d 259 (S.D.N.Y.1999).